UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In Re:<br>Steven Davajon | ) BK No.:   11-38865<br>)<br>) Chapter: 7<br>)<br>) Honorable Jacqueline Cox<br>)<br>) |
| Debtor(s) | ) |
| Gordon Family Trust, et al., | ) Adv. No.: 11-02641<br>) |
| Plaintiff(s) | )<br>) |
| Steven Davajon | )<br>)<br>) |
| Defendant(s) | )<br>) |

**Findings of Fact and Conclusions of Law**

This matter was heard on the Adversary Complaint filed by the Plaintiffs, Gordon Family Trust, Steel Wolf Partners, LLC, and 889 Summit Drive, Laguna Beach Development, LLC (collectively, the "Plaintiffs"), against the Debtor and Defendant in this case, Steven Davajon, and the Court having afforded the parties an opportunity for hearing as was appropriate under the circumstances, and being advised in the premises:

THE COURT FINDS:

1.    This Court entered an order on January 16, 2013, in this adversary proceeding (Document. 38) which found, among other things, that the Defendant in this cause, Steven Davajon, had failed to comply with the terms of the Court's Pretrial Order (entered on August 29, 2012 as Document 23), and, as a consequence of such failure, the Defendant Steven Davajon was held in default in this case. This action was based in part on the Defendant Davajon's admissions, made at the January 16, 2013 hearing in this cause, that he had received and understood the Pretrial Order but failed to submit an Exhibit List, Witness List or Trial Brief as required by that order.   At the prove-up hearing on January 17, 2013, Plaintiffs provided evidence, both oral and documentary, which established their claims against Defendant Davajon.

2.    The Plaintiffs seek to make non-dischargeable their claim against Defendant Davajon in the liquidated amount of $691,397.50 in actual damages, as found by a California Arbitration Award, which was later confirmed by a California Judgment on November 19, 2009, with interest accruing thereon at the legal rate (Exhibit "36").

3.    Plaintiffs' claim against the Defendant arises from a joint venture agreement which they entered into with Defendant Davajon (the "Joint Venture") for the development of the 889 Summit Drive property in Laguna Beach, California (the "Property").

4.    Defendant Davajon's primary and fiduciary responsibility under the Joint Venture Agreement,

admitted into evidence as Plaintiffs Exhibit "2" (the "Agreement"), was to secure $600,000 to $800,000 in development funding for the Joint Venture (the "Funding").

5.    Defendant Davajon knew or must have known that absent the $600,000 to $800,000 in development funding, which he committed to procure based on his own credit and resources, would jeopardize the investment made and to be made by the Plaintiffs in the development of the Property .

6.    Contemporaneously with signing the Agreement , and without Plaintiffs' knowledge, Defendant Davajon obtained significant financing, not for the Joint Venture, but for himself, which he used to purchase three (3) other properties. The last purchase was of the 26453 N. Farwell Road property in Mettawa, Illinois, for $1,387,000, on July 20, 2007 (Exhibit "24"). Davajon knowingly and deliberately concealed the Farwell Road purchase, and the 2 earlier Chicago property purchases, from the Plaintiffs. When Davajon then attempted to raise the required $600,000 to $800,000 of financing he promised to provide for the Joint Venture to develop the Property, Defendant was unable to raise more than $169,900 . Rather than informing the Plaintiffs of this deficiency, Defendant Davajon proceeded to complete this significantly lower- amount loan transaction, which resulted in the placement of a 2nd Trust Deed in the amount of $169,900 encumbering the Property (Plaintiff's Exhibit "6").

7.    After the point in time that he knew that he would be unable to fulfill his obligations to the Plaintiffs under the Agreement, Defendant Davajon continued to make oral and written misrepresentations to the Plaintiffs that he remained willing and able to obtain the full $600,000 to $800,000 in development money required by the Joint Venture to complete the Project. (Plaintiff's Exhibit "10") Davajon's attorney, Frank Fanella, Esq., likewise provided misleading written assurances that Davajon would secure the required funds based on collateral other than the encumbered Summit property. (Plaintiff's Exhibit "14")

8.    When Plaintiffs later learned that the insufficient 2nd Trust Deed of $169,900 had been recorded against the Property, and that Defendant Davajon was, in fact, unable to raise the $600,000 to $800,000 in funds needed to actually and successfully develop the Property, Plaintiffs demanded that Davajon remove the 2nd Trust Deed from title. This Davajon refused to do. In addition, Defendant Davajon sabotaged the Plaintiffs' attempts to obtain refinancing on their own for the Joint Venture by his refusal to transfer his title on the Property to a newly formed California LLC, which step was a mandatory pre-requisite to securing a new investor.

9.    Defendant Davajon's concealment from the Plaintiffs of his actions in purchasing 3-Chicago properties, totaling $3,582,500 in loans (Exhibit "21"), which collectively had the effect of making it impossible for him to raise the funds needed by the Joint Venture to develop the Property, were willful and reckless acts. In addition, Defendant Davajon's subsequent refusal to explain to the Plaintiffs his inability to obtain the $600,000 to $800,000 in required funding showed reckless disregard of his duties and obligations to his joint venturers, as did his refusal to cooperate with the Plaintiffs' in their efforts to obtain the alternate financing or substitute investors needed for the Joint Venture. Davajon's non-cooperation prevented Plaintiffs from being able to mitigate their losses.

10.    The amount of the Plaintiffs' damages attributable to Defendant Davajon's wrongful actions was liquidated by an Arbitration Award (Exhibit "35"), subsequently confirmed in a California Judgment in favor of Plaintiffs in the amount of $691,397.50, a copy of which was admitted into evidence as Plaintiff's Exhibit "36."

Rev: 20130103_apo

THE COURT CONCLUDES AND FURTHER FINDS:

11.    This Court has jurisdiction to hear and determine this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1) and 157(b)(2)(I), 11 U.S.C. § 523, and Federal Rules of Bankruptcy Procedure 4007 and 7001.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

13.    This is a core proceeding under 28 U.S.C. § 157(b)(2).

14.    The party seeking to establish an exception to the discharge of a debt bears the burden of proof. Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw), 895 F. 2d 1170, 1172 (7th Cir. 1990); Banner Oil Co. v. Bryson (In re Bryson), 187 B.R. 939, 961 (Bankr. N.D. Ill. 1995).

15.    The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991).

16.    Exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor in order to further the policy of providing a debtor with a fresh start in bankruptcy. Shaw Steel v. Morris (In re Morris), 223 F. 3d 548, 552 (7th Cir. 2000); Kolodziej v. Reines (In re Reines), 142 F. 3d 970, 972-73 (7th Cir. 1998); Goldberg Secs. v. Scarlata (In re Scarlata), 979 F. 2d 521, 524 (7th Cir. 1992); In re Zarzynski, 771 F. 2d 304, 306 (7th Cir. 1985). "The statute is narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." Park Nat'l Bank & Trust of Chicago v. Paul (In re Paul), 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

17.    Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the dischargeability of debts. Section 523(a)(2)(A) provides as follows:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt –

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A).

18.    Section 523(a)(2)(A) lists three separate grounds for dischargeability; actual fraud, false pretenses, and a false representation. Id.; Bletnitsky v. Jairath (In re Jairath), 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). Even though the elements for each exception vary under common law, courts in the Seventh Circuit are required to apply a single test to all three grounds. Jairath, 259 B.R. at 314.

19.    The Seventh Circuit has made it clear that misrepresentation and reliance thereon are not always required to establish actual fraud. McClellan v. Cantrell, 217 F.3d 890, 894 (7th Cir. 2000).

20.    Indeed, the Seventh Circuit has defined "fraud" as follows:

'Fraud is a generic term, which embraces all the multifarious means which human ingenuity can

devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated."

Id. at 893 (quoting Stapleton v. Holt, 207 Okla. 443, 250 P.2d 451, 453-54 (Okla. 1952)). "Actual fraud" is not limited to misrepresentation, but may encompass "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." Id. (internal quotation omitted). Hence, a different analysis must be utilized when a creditor alleges actual fraud. Id. The McClellan court opined that because common law fraud does not always take the form of a misrepresentation, a creditor need not allege misrepresentation and reliance thereon to state a cause of action for actual fraud under §523(a)(2)(A). Id. Rather, a creditor must establish the following: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute. Id.

21.    Defendant Davajon clearly "suppressed the truth" from the Plaintiffs concerning his actions in secretly buying 3-Chicago properties, which had the actual and inevitable effect of impairing his own ability to perform his specific obligations under the Joint Venture Agreement to raise $600,000 to $800,000 of debt capital, and which ultimately led to the Plaintiffs' losses and their claims in this case.

22.    Instead of informing the Plaintiffs of his actions and their real, actual financial consequences-- which impaired his ability to obtain the financing needed by the Joint Venture-- Defendant Davajon made representations to the Plaintiffs which were intended to, and did in fact lead the Plaintiffs to reasonably reply and believe that Davajon was still capable of obtaining the financing for the Joint Venture and the Project which he committed to obtain, to Plaintiffs' detriment.

23.    The damages suffered by the Plaintiffs are a direct result of the Defendant's failure to honestly account to Plaintiffs for his improvident actions which had the effect of impairing and exhausting his personal credit and, therefore, his ability to raise the $600,000 to $800,000 of debt capital which he agreed to raise under the Agreement.

FIRST ADVERSARY CLAIM FOR RELIEF:
Non-Dischargeability Based on
Fraud Committed While Acting in a Fiduciary Capacity
under 11 U.S.C. §523(a)(4)

24.    Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny[.]" 11 U.S.C. §523(a)(4). The meaning of these terms is a question of federal law. In re McGee, 353 F.3d 537, 540 (7th Cir. 2003).

25.    In order for Plaintiff to prevail under §523(a)(4), he must prove that the Debtor committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny.

26.    A joint venture is an association of two or more persons to carry out a single enterprise for profit. In re Johnson, 133 Ill. 2d 516, 525-26 (1989).

27.    Partnership principles govern joint ventures. Id. at p. 526.

28.    Partners and joint venturers owe one another fiduciary duties. Bandringa v. Bandringa, 20 Ill. 2d 167, 174 (1960).

29.    When he signed the Agreement, Defendant Davajon assumed fiduciary duties toward the Plaintiffs.

30.    The Court finds that Defendant Steven Davajon was acting in a fiduciary capacity in relation to the Plaintiffs in connection with the Joint Venture Agreement for the development of the 889 Summit Drive property in Laguna Beach, California (Exhibit "2"). Davajon was actively engaged and responsible for securing $600,000 to $800,000 in development funding, which he failed to obtain by reason of material breach of his express contractual duties resulting from fraudulent misrepresentations, non-disclosure and breach of loyalty by the Defendant's secret purchase of three (3) other properties. In particular, Davajon's secret purchase of the 26453 N. Farwell Road property in Mettawa, Illinois, for $1,387,000, on July 20, 2007 (Exhibit "24"), exactly at the time when he was supposed to secure funding for the Joint Venture, rendered him non-creditworthy and incapable of securing the $600,000 to $800,000 in development funds he had promised in the Agreement to the Plaintiffs.

31.    Defendant Davajon's fraudulent actions, as noted above, were in violation of fiduciary obligations which he assumed toward the Plaintiffs, as fellow joint venturers and as persons who relied on him to faithfully and honestly perform his duties under the Joint Venture Agreement, causing the Plaintiffs to suffer the loss of the property and incur substantial damages.

SECOND ADVERSARY CLAIM FOR RELIEF:
Non-Dischargeability Based on Fraud
under 11 U.S.C. §523(a)(2)(A)

32.    The Court finds that Defendant Steven Davajon committed fraud (under the standards noted above) at the inception of the transaction by reason of his secret purchases of three (3) Chicago properties, particularly the time of his purchase of the Farwell property, that rendered the Defendant incapable of qualifying for the $600,000 to $800,000 2nd Trust Deed loan he had obligated himself to secure. Specifically by reason of his purchase of the Farwell property, which resulted in him being able to qualify only for an insufficient $169,900 2nd Trust Deed (Exhibit "6"), was in direct violation of his initial promise and contractual obligation to secure $600,000 to $800,000 for purposes of rehabilitation of the 889 Summit Drive property.

THIRD ADVERSARY CLAIM FOR RELIEF:
Non-Dischargeability Based on Fraud under
11 U.S.C. § 523(a)(6): Wilful and Malicious Injury

33.    Section 523(a)(6) of the Bankruptcy Code provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt –
(6) for wilful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. §523(a)(6).

34.    In order for Plaintiff to be entitled to a determination of nondischargeability under §523(a)(6), he must prove three elements by a preponderance of the evidence: (1) that the Debtor intended to and

Rev: 20130103_apo

caused an injury to Plaintiff's property interest; (2) that the Debtor's actions were wilful; and (3) that the Debtor's actions were malicious. See Baker Dev. Corp. v. Mulder (In re Mulder), 307 B.R. 637, 641 (Bankr. N.D. Ill 2004); Glucona Am. Inc. v. Ardisson (In re Ardisson), 272 B.R. 346, 356 (Bankr. N.D. Ill. 2001).

35.    "The word 'wilful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)(emphasis in original). Under Geiger and its stringent standards, to satisfy the requirements of §523(a)(6), Plaintiff must plead and prove that the Debtor actually intended to harm him and not merely that the Debtor acted intentionally and he was thus harmed. See id at 61-62.

36.    Recent decisions have found that either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required by Geiger. See Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 463-65 (6th Cir. 1999); Tex. By & Through Board of Regents of Univ. Of Tex. Sys. v. Walker, 142 F.3d 813, 823 (5th Cir. 1998); Fidelity Fin. Servs. v. Cox (In re Cox), 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000). Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury. Cutler v. Lazzara (In re Lazzara), 287 B.R. 714, 723 (Bankr. N.D. Ill. 2002). An act is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse. Matter of Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994). The test for maliciousness is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse. " Park Nat'l Bank & Trust of Chicago v. Paul (In re Paul), 266 B.R. 686, 696 (Bankr. N.D. Ill. 2001). A debtor does not have to act with ill will or a specific intent to do harm to the creditor for the conduct to be malicious. Thirtyacre, 36 F.3d at 70. Whether an actor behaved wilfully and maliciously is ultimately a question of fact reserved for the trier of fact. Id. Instead of coming clean with the Plaintiffs, the Defendant's action, in allowing the 2nd Trust Deed to be recorded against the Property, without advance warning to the Plaintiffs, while he knew or must have known that the 2nd Trust Deed would create a barrier to later financing efforts, was a grossly reckless and malicious act, taken by Davajon to the detriment of the rights and property of his fellow joint venturers, the Plaintiffs, within the meaning of 11 U.S.C. §523(a) (6).

THIRD ADVERSARY CLAIM FOR RELIEF:
Non-Dischargeability Based on Willful and Malicious Injury
under 11 U.S.C. §523(a)(6)

37.    The Court finds that Steven Davajon acted willfully, maliciously and in reckless disregard of attempts by the Plaintiffs to secure alternate investors and investment. By reason of Defendant Davajon's refusal to remove the deficient $169,900 2nd Trust Deed on the property, and by his unjustified further refusal to transfer title of the Summit property to a newly formed California LLC, which steps were mandatory pre-requisites to securing a new investor, Davajon sabotaged all of Plaintiffs attempts to salvage the investment. Davajon refused to explain or cooperate and his defalcations were malicious and obstructive. In so doing, the Defendant prevented Plaintiffs from being able to mitigate their losses. Defendant's conduct constituted reckless, malicious and willful obstruction, resulting in damage and loss to Plaintiffs

38.    Defendant Davajon's actions to sabotage the Plaintiff's own efforts to refinance the Property, specifically, his refusals to cooperate with the Plaintiffs' reasonable efforts to mitigate their loss, as

found above, were wilful and malicious acts, within the meaning of 11 U.S.C. §523(a)(6).

39.    Based on the findings with respect to the three (3) above-referenced claims in Plaintiffs' Adversary Complaint, the Arbitration Award confirmed in a California Judgment in favor of Plaintiffs in the amount of $691,397.50, Exhibit "36," dated November 19, 2009, is deemed non-dischargeable.

FOURTH AND FIFTH ADVERSARY CLAIMS FOR RELIEF
WAIVED AND DISMISSED

40.    In addition, at time of trial, Plaintiffs waived and dismissed the Fourth Claim for Relief under 11 U.S.C. section 727(a)(2)(a), and likewise waived their Fifth Claim for Relief under 11 U.S.C. section 727(a)(4)(D), which counts are dismissed and no finding or Judgment is entered upon the basis of said counts.

41.    For these reasons, the Plaintiffs' claim against the Defendant Davajon, memorialized in the California Judgment dated November 19, 2009, in the sum of $$691,397.50, is   found to be non-dischargeable under 11 U.S.C. §§523(a)(2), (a)(4) and (a)(6).  A separate judgment order shall issue in accordance with this finding.

Enter:    *Jacqueline P. Cox*

J. Cx

United States Bankruptcy Judge

Dated:    1-30-13

**Prepared by:**
PETER D. GORDON, ESQ., – Pro Hac Vice
8050 Melrose Avenue, 2nd Floor
Los Angeles, California 90046-7015
(323) 651-5111 OFFICE — FAX (323) 651-3726

In association with
BRUCE DOPKE, ESQ.
450 W. Schaumburg Road
P.O. Box 681246
Schaumburg, IL  60168-1246
Tel:  847-524-4811
Fax: 847-524-4131
email:  bruce@dopkelaw.com
ARDC:  3127052